## CHASE *v.* THE HAMILTON INSURANCE COMPANY.

The applicant for insurance described the subject of the risk as a stone dwelling-house, without disclosing the fact that a wooden kitchen was attached thereto: *Held*, that the word 'dwelling-house' is to be construed as including the kitchen, and that the application cannot be deemed one for the insurance only of so much of the building as was made of stone.

Where the application stipulates that the insurer shall not be bound by acts or statements made to or by any agent unless contained in it, the knowledge of an agent of the insurer of facts not stated in the application is immaterial in the absence of fraud, or of his having prevented their statement by the applicant.

*Plumb* °v. *Cattaraugus Mutual Insurance Company* (18 *N. Y.*, 392), considered and distinguished.

APPEAL from the Supreme Court. The complaint was that the defendant, a corporation created under the laws of Massachusetts, had agreed to insure the plaintiff against damage by fire to his stone dwelling-house, and to execute a policy for that purpose; that he had paid the required premium; that the building was consumed by fire within the term stipulated for the continuance of the risk, but the defendant refused to issue a policy, or to pay the sum insured. The trial was before a referee. It was proved on the part of the plaintiff that he had some negotiations with one Atwood, an insurance broker accustomed to procure the taking of risks by the defendant, and who had examined the premises and corresponded with the officers of the company in respect to the amount of premium. Atwood had transmitted to the defendant a written and printed application signed by the plaintiff, being a blank form furnished to Atwood by the company, and filled up by Atwood. In this application the building was described as a stone dwelling-house, without any reference to a wooden kitchen which was attached to and formed a part of the establishment. The application referred to the charter and by-laws of the company, and stated that the applicant held himself bound by the terms thereof. The 13th by-law provided that "unless the applicant for insurance make a true representation of the property on which he requests insurance, so far as concerns the risk and value thereof, the policy issued thereon shall be void, and in case the application is made through an agent, the applicant shall be held liable for the representation. No insurance agent or broker forwarding applications to this office is authorized to bind the company in any case whatever." The application also stated "that the misrepresentation or suppres-

sion of material facts shall destroy the applicant's claim for a damage or loss, and the company shall not be bound by any act done or statement made to or by any agent or other person which is not contained in this application." The defendant's president wrote to Atwood upon receiving the application that the risk would be taken at two per cent premium, and requested him, if the plaintiff desired insurance at that rate, to return a new application. Atwood informed the plaintiff that he thought there was some mistake about it, and that the risk would be taken at a less premium. He then filled out a new application, dated October 18, 1854, which was a mere copy of the former one, and forwarded it, signed by the plaintiff. On the 1st of November, 1854, the plaintiff paid Atwood the amount of the premium at two per cent. On the night of November 2d, the house was burned without fault on the part of the plaintiff. The defendant declined the risk as soon as it received the application. Evidence was given of the service of notice, preliminary proof of loss, &c. The defendant moved for a nonsuit, which was refused and an exception taken. The referee directed judgment for the plaintiff, which was affirmed at general term in the eighth district, and the defendant appealed to this court.

*Amasa J. Parker*, for the respondent.

*John H. Reynolds*, for the appellant.

GROVER, J.  This action is based upon the ground that the defendant had entered into a contract to insure the plaintiff's building against loss or damage by fire to the amount of $1,500, by a proposition upon the part of the defendant which was accepted by the plaintiff. The basis of the proposition made by the defendant was the application signed by the plaintiff. In this the building upon which insurance was requested was declared to be a stone dwelling-house. By the proof it appeared that the building was a stone building with a wooden kitchen, twelve by fourteen feet, one story

high, attached. It is insisted by the counsel for the defendant that the insurance was only to be upon the stone building, and not upon the wooden kitchen. The application was for insurance upon a stone dwelling-house. This implies that the policy is to cover an entire dwelling-house. The proposition that where a dwelling-house consists of a building a part of which is stone and a part wood, the owner may procure a policy of insurance upon his stone dwelling-house, and that it shall cover only the part constructed of stone, is I think more ingenious than sound. A dwelling-house is an entire thing. It includes the building and such attachments as are usually occupied and used by the family for the ordinary purposes of a house. A kitchen constructed like the one in this case clearly constitutes a part of the dwelling-house. A policy of insurance upon a dwelling-house, when that is the only description of the subject of insurance, must attach to the whole, or it will not to any portion of it.

It is argued that the application having been filled up by Atwood, the agent of the defendant, and he being aware of the situation of the building and of the kitchen, the defendant cannot defend upon the ground that the kitchen was not embraced in the application. In other words, that anything affecting the risk known to the agent of the company, who forwards the application for insurance, need not be disclosed in the application. This position could not, I think, be sustained upon principle in the absence of authority. The application is signed by the assured, and it is expressly stated therein that the company shall not be bound by any act done or statement made to or by any agent or other person which is not contained in this application. This is the express agreement of the party. Upon what principle the court is to set the provision aside I am unable to perceive. A party signing a paper in reference to an insurance contract is presumed to know its contents, the same as though it related to any other subject. Parties are at liberty to incorporate any provisions in their contracts that they please, provided they do not violate the rules of law. There is no reason why a party contracting with another

through an agent may not agree that anything done by or known to the agent shall not affect the contract unless made known to the principal in writing. That is precisely this case; and unless insurance contracts are to be made exceptions to the rule, the plaintiff is bound by the statements in the application, whether he knew them or not, unless prevented by fraud imputable to the defendant from learning what they were. Carelessness of parties, too prevalent in entering into contracts of this description, cannot justify a departure from the settled rules of law. The plaintiff, if he knew the contents of the application, cannot complain of being bound by its provisions. It is his contract. If he did not know, that is not the fault of the defendant. It had a right to presume that he did know, and to act upon that presumption. It probably did so act when making the proposition to insure the plaintiff's dwelling-house at two per cent. Although it may be hard upon the plaintiff thus to lose the benefit of the contract, it would be harder still to hold the defendant bound to insure a dwelling-house composed in part of stone and in part of wood because it had proposed to insure a stone dwelling-house; and thus to hold, upon the ground that the defendant's agent knew the condition of the property, in the face of a positive agreement by the plaintiff that the defendant should not be affected by such knowledge. But this question is conclusively settled by authority. In *Jennings* v. *The Chenango Mutual Insurance Company* (2 *Denio*, 75), the cases are reviewed by JEWETT, J., and it is clearly shown that knowledge by the agent of the insurer of the falsity of a warranty entered into by the assured will not relieve the assured from the consequences of the breach. This case shows that from the earliest time such has been the law of England, of this State and of Massachusetts. The same rule is laid down by the elementary writers, Phillips, Angell and others. *Brown* v. *The Cattaraugus Mutual Insurance Company* (18 *N. Y.*, 387) holds the same doctrine. I have not been able to find a single adjudication to the contrary. It is supposed that the case of *Plumb* v. *the same defendant* (18 *N. Y.*, 392) militates against the rule. In that case it was held that

when the agent of an insurer was authorized by him to make surveys and fill applications for insurance on his behalf, made a survey of the building proposed to be insured, filled out the application and procured the signature of the assured thereto, without examination or knowledge of its contents, upon his assurance that all was correct and proper, that the insurer was estopped from showing the falsity of the statement contained in the application. It will readily be seen that there is no analogy between the case now under consideration and the case last cited. In this case there was no evidence that Atwood had any authority from the defendant to make surveys; that he had ever made any to the knowledge of the defendant, or that he made any statement to the plaintiff as to the correctness of the application. There is no feature necessary to constitute an estoppel in the case; besides, I am at a loss to discover how an estoppel is to be based upon the acts and declarations of an agent whose acts and declarations it is agreed shall not affect the party against whom the estoppel is claimed.

It is argued by the learned judge who gave the opinion of the Supreme Court that the referee may have found the fact that the kitchen did not increase the risk. The cases above referred to show that had the policy in this case been issued containing the clause (as the defendant's policies did) making the application a part of the contract, this would have been a warranty by the assured that the dwelling-house was stone, and there being a breach by its being in part wood the plaintiff could not recover whether the risk was increased or not. The distinction between a warranty and a representation is that the former is contained in and forms part of the contract and must be complied with whether material to the risk or not, while the latter is outside of the contract and it is immaterial whether it is true or false unless material to the risk. In this case the plaintiff could not have recovered had the policy been issued on account of the breach of the warranty that the house was stone. As it is he cannot recover on the ground that the defendant proposed to insure a stone house. The plaintiff accepted this proposition. The house was part wood and part

stone, consequently the proposition did not embrace it, and no contract to insure the house was ever made.   There were other exceptions taken upon the trial but it is unnecessary to consider them.

The judgment should be reversed and a new trial ordered.

· S. B. Strong, J., delivered a dissenting opinion, in which Allen, J., concurred; Selden, J., was absent.

Judgment reversed and new trial ordered.