Elizabeth T. Keegan, Doing Business as James P. Keegan Co., Plaintiff, *v.* Excess Insurance Company of America, Defendant.

Supreme Court, Trial Term, Columbia County, June 2, 1952.

*John J. Scully* for plaintiff.

*William E. J. Connor* for defendant.

TAYLOR, J. This action was tried by the court without a jury at the Trial Term for Columbia County.

The plaintiff seeks to be reimbursed by the defendant, an excess insurance company, in the sum of $3,500 which she expended in the settlement of an action brought against her to recover damages for personal injuries resulting from the alleged negligent operation of her motor vehicle on August 20, 1943, and for attorneys' fees which she incurred in connection with the adjustment of that action. A settlement was negotiated after the defendant had denied liability because of the plaintiff's alleged breach of a condition in the policy of insurance issued by it to her which required immediate notice to it of the occurrence of the accident. No question is raised with respect to the plaintiff's right to settle, the amount of the settlement which she has made or the necessity for or the reasonableness of the attorneys' fees which she incurred.

On September 29, 1942, the defendant issued through Ter Bush & Powell, Inc., of Schenectady, New York, its policy effective for one year from its date in which it agreed to indemnify the plaintiff against loss to the limits of the liability therein provided resulting from accidental injury arising out of the operation of the plaintiff's motor vehicles therein described over and above the limits of a primary insurance contract issued by the Travelers Insurance Company at the same time. On August 20, 1943, and during the term of the policy a motor vehicle covered

thereby was involved in an automobile accident in the city of New York. Thereafter actions were instituted against her and others as defendants by one Bothner in which he sought damages for personal injuries allegedly sustained in the accident. After trial a judgment against the defendants was rendered in the amount of $40,871.05. On appeal that judgment was reversed and a new trial was ordered. (*Bothner* v. *Keegan,* 275 App. Div. 470.) At a conference preceding the retrial of the action in which the defendant refused to participate on the basis of its denial of liability, a settlement was effected to which the plaintiff contributed the sum of $3,500 above the amount paid by the primary carrier.

The pertinent terms of the policy are as follows: " Upon the occurrence of any accident which may involve liability on the part of the Company, the Assured shall give immediate written notice thereof, with the fullest information obtainable at the time to the Company at 99 John Street, New York, New York. The Assured shall give like notice, with full particulars, of any claim made on account of such accident. If any suit is brought against the Assured to enforce such claim, the Assured shall immediately forward to the Company copies of every summons or other process that may be served upon the Assured."

On August 25, 1943, Ter Bush & Powell, Inc., received notice of the accident from the plaintiff which it in turn sent to the primary carrier. On June 30, 1945, the summons and complaint in the action instituted by Bothner were served on the plaintiff who handed them to Ter Bush & Powell, Inc., which thereupon forwarded them to the primary carrier which thereafter undertook the defense of the action as required by its policy. There is no proof in the record that either the plaintiff or Ter Bush & Powell, Inc., ever notified the defendant of the occurrence of the accident or the institution of the suit until June 30, 1948, when the latter by letter and telephone informed it of the date on which the accident had occurred and the result of the trial which had been had. The letter was received by the defendant on July 2, 1948. On July 9, 1948, it acknowledged by customary post card the receipt of the notice.

Immediate notice under the quoted policy clause is notice within a reasonable time under all the circumstances. (*Reina* v. *United States Cas. Co.,* 228 App. Div. 108, affd. 256 N. Y. 537; *Travelers Ins. Co.* v. *Pomerantz,* 246 N. Y. 63; *Greenwich Bank* v. *Hartford Fire Ins. Co.,* 250 N. Y. 116.) Failure to give notice until nearly five years after the accident had occurred is palpably unreasonable. The plaintiff, however, contends that

Ter Bush & Powell, Inc., which wrote the policy was the agent of the insurer and that notice to it was sufficient observance of the pertinent policy terms. The evidence of the plaintiff's witness, the vice-president of the issuing agency, was as follows: " Q. These people [Ter Bush & Powell, Inc.] are engaged in selling, among other things, liability insurance upon automobiles? A. That is correct. Q. And they are agents for a certain number of companies, are they not? A. That is correct. Q. And they have filed with the Insurance Department of the State of New York the names of the companies for which they are agents, is that right? A. That is correct, yes. Q. Now the Excess Insurance Company of America is not one of those companies, is it? A. No, it was not. Q. It was not one of those companies at the time that this policy was issued? A. That is correct. Q. At the time that you sold Mr. Keegan or Mrs. Keegan, and was it Mrs. Keegan? A. I personally did not have the contact with the insured; the agency did. Q. At the time Ter Bush & Powell sold insurance to either Mr. Keegan or Mrs. Keegan you were not an agent for the Excess Insurance Company of America; that is right, isn't it? A. That is correct. Q. There are times when a person applies for insurance upon an automobile which is in excess of the amount that you as agent may desire to write with any one particular company, isn't that correct? A. No, that is not entirely correct. Q. It does occur? A. That was not the reason we issued in this case. Q. Does it ever occur that you want to write insurance with more than one company? A. Yes. Q. And it occurred here, didn't it? A. Yes it did. Q. Tell me what the reason was. A. As I understand it, there was a rate concession offered by the Excess Insurance Company of America at that time so that the excess limits over and above the primary carrier could be placed with the Excess of America at a lower cost to our client than if the entire limits were placed with a primary carrier. Q. When you speak of your client you are speaking of Mr. Keegan? A. The Keegan Trucking Company. Q. So Mr. Keegan was your client and you knew there was a company by the name of Excess Insurance by which you as broker could purchase for Mr. Keegan insurance in excess of $10,000 at a cheaper rate than you could write it as agent with the Travelers Insurance Company? A. At that particular time. Q. That was the reason that you did it, and so acting as broker, and only as broker for Mr. Keegan, you made contact with the Excess Insurance Company, and for Mr. Keegan you purchased this policy, isn't that correct? A. That is correct, yes." The

testimony thus given by the plaintiff's own witness establishes the antithesis of her present position and shows conclusively that Ter Bush & Powell, Inc., was employed by the plaintiff to secure the insurance and, hence, was the agent of the insured and not the insurer. (*Allen* v. *German Amer. Ins. Co.,* 123 N. Y. 6, 16; *Wolowitch* v. *National Sur. Co.,* 152 App. Div. 14; *Wright* v. *American Equitable Assur. Co.,* 131 Misc. 215, 218, affd. 223 App. Div. 877.) Notice to it was therefore not in compliance with the policy provisions.

The plaintiff also argues that only in the event that there was likelihood that the claim would exceed the limits of the coverage of the primary carrier was it required that notice of the occurrence of an accident be given the excess carrier. She urges that since the primary carrier had the duty to investigate the accident, to defend any action arising from it and to pay up to the limits of its policy liability, notice to an excess carrier was not necessary until it appeared to the underwriting agency that there existed the reasonable probability that payment by the excess carrier would be required. The answer to that contention is that the terms of the agreement between the parties of which there was no waiver in the instant case provided otherwise.

Prima facie the plaintiff has failed to establish fulfillment of the policy requirement of notice, a fact necessary to be established to permit a recovery on the policy, and the defendant's motion to dismiss the complaint made at the close of the plaintiff's testimony on which decision was reserved must be and is granted, with taxable costs.

Judgment may be entered accordingly.